J-S12031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| TERMINATION OF PARENTAL RIGHTS TO: A.L., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L., MOTHER | : : : : : : | |
| | : | No. 1647 MDA 2022 |

Appeal from the Decree Entered November 16, 2022
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  058-ADOPT-2022

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JUNE 1, 2023**

C.L. ("Mother") appeals from the November 16, 2022 decree that terminated her parental rights to her daughter, A.L., born in October 2007.[1] In this Court, Mother's counsel has filed an application to withdraw pursuant to ***Anders v. California***, 386 U.S. 738 (1967), asserting that Mother's appellate claims are frivolous, along with a brief.  After careful review, we affirm the decree of the orphans' court and grant counsel's application.

Cumberland County Children & Youth Services ("CYS" or "the agency") first became involved with this family following two referrals in February 2021 regarding allegations of inappropriate discipline by Mother and A.L.'s truancy. ***See*** N.T., 11/15/22, at 6.  Specifically, the agency received reports that

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  A.L.'s father was G.S., who passed away on February 1, 2008.

Mother was expressing inappropriate anger towards A.L., threatening to throw her out of the family home, and that A.L. had over fifty unexcused absences from school between November 2020 and January 2021. *Id.* at 19-20. Upon establishing contact, CYS also became concerned regarding Mother's mental health due to her "erratic behavior," which included excessive "yelling and screaming" and threats to file "criminal charges" against CYS representatives for defamation of her character. *Id.* at 6, 24-25. During this initial meeting, Mother claimed that certain unidentified individuals were "following her and trying to kill her." *Id.* at 84. Mother was also unwilling, or unable, to acknowledge A.L.'s serial educational absences. *Id.* at 7. Shortly thereafter, A.L. self-reported that she was "not feeling safe in Mother's home." *Id.* at 8.

On April 13, 2021, CYS filed a dependency petition with respect to A.L., which was granted on June 23, 2021. A.L. was placed with a foster family and the court initially set a permanency goal of reunification with Mother. Following evaluation, A.L. was diagnosed with a generalized anxiety disorder and an "attachment injury," or an inability to form an appropriate maternal bond with Mother. *Id.* at 67-70. These disorders were directly attributable to Mother's upbringing of A.L., and her symptoms worsened during her interactions with Mother. *Id.* Specifically, A.L. would experience negative changes in her eating behavior and exhibit despondent behavior on days she was scheduled to visit her Mother. *Id.* at 59.

With respect to her permanency objectives, Mother was ordered to: (1) present records from her mental healthcare provider(s) or, in the alternative, obtain a mental health assessment and sign related medical releases; (2) complete a parenting evaluation with Alternative Behavior Consultants ("ABC"); and (3) cooperate with the agency's efforts to provide services. **Id.** at 13; **see also** Order, 6/23/21. Initially, Mother was permitted supervised visitations with A.L. in the community. However, A.L. quickly expressed she was "not comfortable" continuing with these visits. N.T., 11/15/22, at 35-39, 60-62. In response, CYS offered in-person visitations at ABC, which Mother declined due to her concerns regarding the staff. **Id.** at 38-39. Consequently, Mother had no physical visits with A.L. for approximately one year and little other contact aside from a limited number of supervised video calls that took place between May and September 2022. **Id.** at 35-39, 50-51.

On September 22, 2022, CYS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2] Six days later, Mother reached out to CYS and, for the first time, expressed a willingness to go forward with in-person visits at ABC. **Id.** at 28. The orphans' court held a termination hearing on November 15, 2022, wherein CYS adduced testimony from, *inter alia*, CYS caseworkers Pricylla Derosier and

---

[2] On July 13, 2022, the orphans' court appointed Jennifer Archer, Esquire, to serve as A.L.'s guardian *ad litem* ("GAL") and separately designated Cindy Martin, Esquire, as her legal counsel pursuant to 23 Pa.C.S. § 2313(a).

John Bouder, CYS casework supervisor Katherine Whitney, case manager Lauren Taylor, A.L's foster father, and Leslie Londre, a mental health clinician who evaluated A.L. for the purposes of this matter. A.L. also testified at the hearing and expressed, *inter alia*, her preference that Mother's parental rights be terminated. **Id.** at 103. Mother testified on her own behalf.

Ultimately, the orphans' court concluded that CYS had met its burden and terminated Mother's parental rights to A.L. in a final decree filed on November 16, 2022. On December 2, 2022, Mother filed a timely notice of appeal along with a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the orphans' court filed a responsive opinion pursuant to Rule 1925(a)(ii).

In this Court, Mother's counsel has filed an application to withdraw pursuant to **Anders** along with a brief expressing his belief that Mother's potential appellate claims are frivolous. This Court has extended the **Anders** procedures to appeals taken from decrees terminating parental rights involuntarily. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020) (citing **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992)). Accordingly, we will begin our review by considering counsel's petition to withdraw and the accompanying brief. **See B.G.S.**, 240 A.3d at 661 ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to withdraw pursuant to **Anders**, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the **Anders** brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. **Id.** By way of confirming that client notification has taken place, our precedent requires that counsel provide this Court with a copy of the letter advising the appellant of his or her rights in conformity with **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005). **See B.G.S.**, 240 A.3d at 661.

Our Supreme Court has also set forth substantive requirements for counsel's **Anders** brief, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. **Id.** (citing **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009)). Thus, a compliant **Anders** brief should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." **Id.** (quoting **Santiago**, 978 A.2d at 361).

Instantly, counsel has submitted both a petition to withdraw and an **Anders** brief averring that Mother's appeal is frivolous. Attached to counsel's

application is a **Millisock** letter dated February 7, 2023, indicating that counsel provided a copy of the brief to Mother. **See** Application to Withdraw, 2/9/23, at 6-7. This letter properly advised Mother of her right to retain alternative counsel or raise supplemental arguments on her own.[3] **Id.** Our review similarly confirms that counsel's **Anders** brief provides a cogent and well-cited summary of the factual and procedural history of this matter. **See** Anders Brief at 6-9. Furthermore, the brief contains an orderly and well-researched discussion of governing Pennsylvania law. Counsel refers to several lines of argument that might support Mother's appeal, but ultimately explains that these potential points of contention are frivolous in light of the unchallenged evidence supporting the orphans' court's involuntary termination of her parental rights. **Id.** at 10-19.

Based on the foregoing, we find that counsel has complied with the requirements attendant to **Anders**. Accordingly, we will proceed to review the issues outlined in his brief. In so doing, we must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **B.G.S.**, 240 A.3d at 662 (quoting **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015)).

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent

_____

[3] Mother has not tendered a response to counsel's application to withdraw.

evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed at statute by 23 Pa.C.S. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to Section 2511(a)(1)-(11). *M.E.*, 283 A.3d at 830. If the orphans' court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and

convincing evidence," the court then assesses the petition under Section 2511(b), which focuses primarily upon the child's developmental, physical and emotional needs and welfare. ***Id.*** at 830 (citing ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013)); ***see also*** 23 Pa.C.S. § 2511(b). This Court "need only agree with any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights." ***T.S.M.***, 71 A.3d at 267 (citing ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this proceeding implicates Section 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Furthermore, termination pursuant to Section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal or placement of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, the relevant inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). This Court has acknowledged:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*Id.* at 11-12 (emphasis in original; internal citations omitted).

Finally, this Court has explained that,

> while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as pr[e]scribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

With respect to Section 2511(b), we are required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  It is well-established that this inquiry "requires the trial court to consider the nature and status of bond between a parent and child."  *M.E.*, 283 A.3d at 837 (citing *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993).  "When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional consequences.'"  *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2017) (quoting *E.M.*, 640 A.2d at 484-485).  However, the "bond examination" is only one amongst many factors to be considered in assessing the soundness of termination:

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights.

*M.E.*, 283 A.3d at 837 (internal citations omitted).

Instantly, the orphans' court concluded that termination of Mother's parental rights was appropriate pursuant to section 2511(a)(8) and set forth the following rationale for its holding:

> [A.L. has] indisputably been removed from [Mother's] care for a period of 12 months or more. The reasons for the [c]hild's removal from [Mother's] care were based in [Mother's] untreated mental health affecting her ability to parent, and the most critical piece of reunification has always been [Mother] obtaining a mental health assessment and subsequent mental health treatment, which turned into a directive for a psychiatric assessment, and the corollary directive to obtain the parenting assessment to assess parenting skills needs. [Mother's] refusal to engage with these goals and directives on the basis that she feels they are unnecessary has left the case essentially where it began over a year ago. It is clear to us, as it always has been, based both on reports of [Mother's] fabricated allegations akin to conspiracy theories that participants in the dependency action have labored to keep her daughter from her and in unsafe conditions, on [Mother's] demeanor in the courtroom, and on obvious sorrow and trauma displayed by her daughter in the courtroom and to her [GAL], that [Mother] requires mental health treatment. Unpredictability in [Mother's] behavior is the touchstone of this case. [A.L.] was removed from her care on the basis of such unpredictability, making [A.L.] feel unsafe and miss extensive school, and which has played out in [Mother's] inability to discern what is reality, or act sensibly, and practically speaking, in the ability of the parent and child to communicate in a health or safe manner or for [A.L.] to feel secure in the home with [Mother]. This condition has not been remedied in any manner and has in fact increased in severity based on our observations of [Mother] and on continued reports of [Mother's] fantastical allegations.
>
> . . . .
>
> We found competent evidence of record and are convinced that it is in [A.L.'s] best interests to terminate [Mother's] parental rights and allow for her to be adopted by her foster parents. [A.L.] feels safe, stable, and loved in the home she has come to feel like her

own since April of last year. [A.L.] feels love for [Mother], worries about her, and believes she will have contact with her in the future, but does not feel the relationship is presently emotionally healthy or comfortable for her and wishes to be adopted by her foster family.

Trial Court Opinion, 1/11/23, at 9-11. Our review of the certified record reveals ample support for the orphans' court's above-recited findings.

With respect to the first prong of Section 2511(a)(8), there is no dispute that A.L. was removed from Mother's care and placed with her foster family in June 2021, more than twelve months prior to the agency's filing of a termination petition in September 2022. Thus, this first factor is satisfied.

Removal was mandated after CYS became concerned regarding the status of Mother's mental health and its effects upon A.L. *See* N.T., 11/15/22, at 6-8, 24-25. Specifically, A.L. described Mother's parenting as "very unpredictable" and testified that Mother regularly resorted to "yelling and throwing stuff and just not really caring about what anyone else thinks or like has to say[.]" *Id.* at 100, 106. In addition to threatening to kick A.L. out of her home at the age of fourteen, Mother's mental state contributed to A.L. accruing more than fifty school absences in a mere three-month period. *Id.* at 19-20. Moreover, A.L. was diagnosed with both a generalized anxiety disorder and an "attachment injury" due to her inability to "feel safe" with Mother. *Id.* at 67-70.

In the fifteen months since A.L.'s removal, the record reflects that Mother has flatly declined numerous opportunities to address these concerns. *See id.* at 10-13. Instead, Mother advanced unfounded claims concerning her

daughter, including that A.L. was pregnant, being starved and abused by her foster family, and had been diagnosed with a heart condition that prevented her from attending school. *Id.* at 31-35, 43, 53, 56-57. Mother also contacted both local law enforcement and the Federal Bureau of Investigation and claimed that A.L. was the victim of human trafficking being perpetrated by her foster family, which triggered an investigation that found no basis for the allegations. *Id.* at 33-35. To be clear, none of these assertions have ever been substantiated, and A.L. vigorously denied them during the termination hearing. *Id.* at 33-35, 107. Furthermore, Mother has been unable to adduce alleged proof of these claims when asked to do so. *Id.* at 57-58.

Mother has also largely refused to provide releases that would permit the disclosure of her psychological evaluations and related medical records. *Id.* at 11. She provided a single, limited release with respect to one healthcare provider in June 2021, which confirmed only that she had been diagnosed with post-traumatic stress disorder. *Id.* However, the agency was unable to obtain any follow-up information concerning Mother's prognosis or recommended treatment. Furthermore, despite receiving two referrals for parenting evaluations in September 2021 and March 2022, Mother was "unsuccessfully discharged" from the program on both occasions for failing to schedule an initial appointment. *Id.* at 15. On another occasion in February 2022, Mother threatened to assault Ms. Derosier with a pair of scissors during a home visit. *Id.* at 30, 53-54.

Based on the foregoing testimony, we also find ample support for the orphans' court's finding that the conditions that led to A.L.'s removal persist. Thus, the second prong of Section 2511(a)(8) has been satisfied.

Turning to the third and final statutory prong, the record also supports the orphans' court's conclusion that A.L.'s needs and welfare will be best served by severing Mother's parental rights. At the termination hearing, Ms. Londre averred that A.L.'s mental trauma and resulting diagnoses were attributable to her upbringing by Mother. *Id.* at 69-70. Furthermore, Ms. Londre reported that A.L.'s mental health symptoms initially improved following her removal, but worsened once in-person visitations with Mother began in September 2022. *Id.* at 73 ("[A]fter the in-person visits began is when we noticed the uptick in severity of symptoms."). As noted above, A.L. was a chronic truant under Mother's care. Since entering foster care, by contrast, A.L. has greatly improved her educational performance and is currently earning "all A's" at school.[4] *Id.* at 17. Taken as a whole, the record uniformly indicates that Mother causes A.L. to experience serious anxiety and detrimentally affects her ability to thrive. Accordingly, we discern no error in the orphans' court's assessment that termination of parental rights best served A.L.'s needs and welfare pursuant to Section 2511(a)(8).

Having determined that there are sufficient grounds for termination pursuant to at least one subsection of 23 Pa.C.S. § 2511(a), we now turn to

---

[4] At the termination hearing, her foster father expressed the family's intention to pursue adoption, which A.L. also desires. *See* N.T., 11/15/22, at 73, 91.

Section 2511(b), which affords "primary consideration" to "the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). With respect to the bond assessment required under this subsection, we acknowledge that Mother clearly professed that she loves A.L. and desires that she be returned to her care. *See* N.T., 11/15/22, at 41, 118. However, the record equally reflects that A.L. does not share these feelings for Mother and does not feel a bond with her. *Id.* at 97. Specifically, Ms. Taylor reported that A.L. did not want to have any contact with Mother: "[A.L.] was not comfortable with visits period. . . . [S]he would've preferred no visits entirely." *Id.* at 61. To that end, Ms. Taylor testified that A.L. and Mother "primarily communicated through bickering and arguing." *Id.* at 62.

The following exchange is demonstrative of A.L.'s preferences:

Q  [A.L.], do you believe your mom loves you?

A  Yes.

Q  Do you believe that she wants the best for you.

A  I think she wants what's best for her.

Q  Why do you say that?

A  Because in the long run she doesn't think about how anything she's done has affected me, and she only thinks about her own reputation out of this.

Q  Do you understand that if the [c]ourt does terminate your mom's rights that that's it, it's final? Her rights will be completely and finally terminated, do you understand that?

A  Yes.

- 15 -

Q      Okay.  But you're still asking the [c]ourt to do that?

A      Yes.

*Id.* at 103.  Stated succinctly, there is no evidence of a positive bond between Mother and A.L. and there is no indication that termination will destroy a "necessary and beneficial relationship," or otherwise cause A.L. to suffer "extreme emotional consequences."  ***J.N.M.***, 177 A.3d at 944.

Moreover, as detailed above in our analysis of the third prong of Section 2511(a)(8), there is more-than-adequate support for the orphans' court's finding that terminating Mother's parental rights served A.L.'s developmental, physical, and emotional needs and welfare.  Thus, we discern no error.

In sum, our independent review confirms that Mother is not entitled to relief and we are satisfied that the record does not contain any non-frivolous issues overlooked by Mother's counsel.  Therefore, we grant counsel's petition to withdraw pursuant to ***Anders*** and we affirm the decree of the orphans' court involuntarily terminating Mother's parental rights to A.L.

Petition to withdraw granted.  Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/01/2023

- 16 -